UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KYLE RAK,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-619** |
| **C-INNOVATION, L.L.C., ET AL.,**<br>    **Defendants** | **SECTION: "E" (3)** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendants C-Innovation, L.L.C. ("C-I"), Island Ventures 6, L.L.C. ("Island Ventures"), and Galliano Marine Services International, L.L.C. ("GMSI") (collectively, the "Defendants").[1] Plaintiff Kyle Rak filed an opposition.[2] The Defendants filed a reply.[3]

## PROCEDURAL BACKGROUND

Plaintiff Kyle Rak alleges he sustained personal injury on October 10, 2022 after his superintendent "suddenly, and without warning or provocation, assaulted and shoved [him] to the ground."[4] Rak further claims that his employer, Defendant C-I, wrongfully terminated his employment the day after the incident.[5] On February 17, 2023,[6] Rak filed this lawsuit asserting claims under theories of negligence and unseaworthiness, for maintenance and cure, and for retaliatory discharge and wrongful termination.[7] The parties agree that all of Rak's claims are based on the premise that he

---

[1] R. Doc. 37.
[2] R. Doc. 43.
[3] R. Doc. 50.
[4] Am. Comp., R. Doc. 8 at p. 3. Rak alleges he suffered, "among other injuries, a blow to the head, loss of consciousness, concussion and a broken right wrist." *Id.*
[5] *Id.* at p. 7.
[6] Original Comp., R. Doc. 1.
[7] Am. Comp., R. Doc. 8 at pp. 5-9.

1

was a seaman under the Jones Act at the time of his alleged injury.[8] After the close of discovery,[9] the Defendants moved for summary judgment, arguing that Rak's claims fail as a matter of law because he was not a Jones Act seaman.[10]

## **LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11] "An issue is material if its resolution could affect the outcome of the action."[12] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[13] All reasonable inferences are drawn in favor of the nonmoving party.[14] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[15]

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[16] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving

---

[8] 46 U.S.C. § 30104 *et seq*.; *see* R. Doc. 8; R. Doc. 37-5 at ¶ 16; R. Doc. 43-1 at ¶ 16.
[9] *See* R. Doc. 47.
[10] R. Doc. 37-1 at 4.
[11] Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[12] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[13] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[14] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[15] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[16] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[17]

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, as it is in the case, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[18] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[19] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[20] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of

---

[17] *Celotex*, 477 U.S. at 322–24.
[18] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322–24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[19] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[20] *Celotex*, 477 U.S. at 332–33.

the evidence relied upon by the nonmovant.[21] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[22] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[23]

Still, "unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[24]

## UNDISPUTED FACTS

On October 10, 2022, the night before he was scheduled to return to the United States after performing a hitch on the OSV ISLAND PERFORMER, Plaintiff Rak sustained injuries in an incident that occurred at the SleepIn Hotel and Casino in Georgetown, Guyana.[25] At the time of the incident, Rak was employed as a pilot

---

[21] *Id.*
[22] *Id.* at 332–33, 333 n.3.
[23] *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.
[24] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[25] R. Doc. 37-5 at ¶ 12; R. Doc. 43-1 at ¶ 12.

4

technician[26] of Remotely Operated Vehicle systems ("ROV Systems") by Defendant C-I.[27] C-I is a marine services company that provides ROV Systems and related services on vessels as a third-party contractor[28] to clients in the oil and gas industry.[29] During the 10-month tenure of his employment with C-I, Rak worked in Guyana aboard the ISLAND PERFORMER,[30] a vessel owned by Defendant Island Ventures.[31] Rak was never an employee of Island Ventures[32] and neither he nor any other C-I employees were members of the ISLAND PERFORMER's crew.[33] Rak's work on the ISLAND PERFORMER was limited to tasks associated with the operation of ROVs in furtherance of C-I's obligations as a third-party contractor on one specific project.[34] C-I did not own the ISLAND PERFORMER or any other vessel from which C-I employees provide ROV Systems or related services to C-I's clients.[35] On October 11, 2022, C-I terminated Rak's employment.[36]

## DISPUTED FACTS

Defendants claim it is an undisputed fact that, had Rak not been terminated in October 2022, Rak's work aboard the ISLAND PERFORMER would have ceased at the completion of C-I's contractual obligations and, afterwards, Rak could have been

---

[26] R. Doc. 37-5 at ¶ 6; R. Doc. 43-1 at ¶ 6.
[27] "ROV Systems are unoccupied machines used for underwater exploration that are operated remotely by individuals located above the water's surface." R. Doc. 37-5 at ¶ 2; R. Doc. 43-1 at ¶ 2.
[28] R. Doc. 37-5 at ¶ 1; R. Doc. 43-1 at ¶ 1.
[29] R. Doc. 37-5 at ¶ 4; R. Doc. 43-1 at ¶ 4.
[30] R. Doc. 37-5 at ¶ 7; R. Doc. 43-1 at ¶ 7.
[31] R. Doc. 37-5 at ¶ 8; R. Doc. 43-1 at ¶ 8.
[32] R. Doc. 37-5 at ¶ 9; R. Doc. 43-1 at ¶ 9.
[33] R. Doc. 37-5 at ¶ 10; R. Doc. 43-1 at ¶ 10.
[34] R. Doc. 37-5 at ¶¶ 7, 11 (citing Decl. of Richard Bourque, R. Doc. 37-2 at ¶¶ 9, 17-18). Rak cited deposition testimony of Roger Clay and argues that he worked on "several projects" aboard the ISLAND PERFORMER. R. Doc. 43-1 at ¶¶ 7, 11 (citing Dep. Tr. of Roger Michael Clay, R. Doc. 43-2 at 18:11-15. There is no evidence that any of the projects he worked on were not associated with his duties as an ROV technician.
[35] R. Doc. 37-5 at ¶¶ 3-4 (citing Decl. of C-I Chief Operating Officer Richard Bourque, R. Doc. 37-2 at ¶¶ 10-11); R. Doc. 43-1 at ¶¶ 3-4.
[36] R. Doc. 37-5 at ¶ 13; R. Doc. 43-1 at ¶ 13.

5

assigned to a different vessel or platform to perform work under a different contract.[37] Rak denies this is an undisputed fact, arguing that there is no evidence his work aboard the ISLAND PERFORMER would have ceased at any particular time and claiming Defendants' statements are self-serving and conclusory.[38] Defendants cite deposition testimony of C-I Chief Operating Officer Richard Bourque to support the contention that when C-I completes work pursuant to a particular contract, its ROV employees are assigned to a different vessel or platform to perform work under a different contract.[39] In response, Rak points to the deposition testimony of Roger Clay, which indicates Rak worked on several projects aboard the ISLAND PERFORMER and worked only on that one vessel during the tenure of his employment.[40] As explained below, even if this fact is in dispute, it is not relevant to the Rak's seaman status.

## LAW AND ANALYSIS

Seamen "are wards of admiralty whose rights federal courts are duty-bound to jealously protect."[41] "The sole purpose of the body of seaman status doctrine is to assure injured seamen the special protections the law has devised for their benefit without spreading those protections among the larger population of amphibious workers who do not merit them," due to the fact that "seamen face special dangers—including deep-sea and open-ocean perils as well as vessel-movement dangers on inland waterways—that

---

[37] R. Doc. 37-5 at ¶¶ 14-15 (citing Decl. of Richard Bourque, R. Doc. 37-2 at ¶¶ 20-21).
[38] R. Doc. 43-1 at ¶ 14.
[39] R. Doc. 37-5 at ¶ 5 (citing Decl. of Richard Bourque, R. Doc. 37-2 at ¶ 12).
[40] R. Doc. 43-1 at ¶ 5 (citing Dep. Tr. of Roger Michael Clay, R. Doc. 43-2 at 18:11-15 ("Q. And during that ten-month period that Kyle [Rak] had been working before this incident, you had worked with him on several occasions, on several projects? . . . A. Yes. Same vessel.")).
[41] *Bass v. Phoenix Seadrill/78, Ltd.* 749 F.2d 1154, 1160-61 (5th Cir. 1985).

demand special protections."[42] As such, the Jones Act "should be liberally construed in favor of injured seamen."[43]

Seaman status is a mixed question of law and fact[44] requiring a fact-intensive analysis that must be determined on a case-by-case basis.[45] At trial, a plaintiff asserting claims under the Jones Act "has the burden of establishing seaman status" at the time of the subject incident.[46] If reasonable persons could draw conflicting inferences, seaman status is a question for the jury and summary judgment must be denied.[47] Nevertheless, summary judgment is proper when the underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw conflicting inferences about whether the claimant is a Jones Act seaman.[48]

**I.    Rak will be able to prove at trial that he contributed to the mission of the ISLAND PERFORMER and had a connection to the vessel that was substantial in duration.**

Only seamen may sue under the Jones Act, but Congress has not defined who is a "seaman."[49] Instead, the "difficult . . . task of giving a cogent meaning to [the] term has

---

[42] David W. Robertson, *The Supreme Court's Approach to Determining Seaman Status Discerning the Law Amid Loose Language and Catchphrases*, 34 J. MAR. L. & COMM. 547, 569-70 (2003) (citations omitted).
[43] *Guidry v. South La. Contractors, Inc.*, 614 F.2d 447, 455 (5th Cir. 1980); *see also Boudreaux v. Transocean Deepwater, Inc.*, 721 F.3d 723, 725-26 (5th Cir. 2013) ("[A] seaman injured in his employ enjoys a right to maintenance and cure [that is] intrinsic to the employment relationship and essentially unqualified.").
[44] *Chandris Inc.* v. *Latsis*, 515 U.S. 347, 369 (1995); *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991).
[45] *Encarnacion v. BP Expl. and Prod., Inc.*, 2013 WL 968138 (E.D. La. Mar. 12, 2013); *see also In Re Endeavor Marine Inc.*, 234 F.3d 287, 290 (5th Cir. 2000).
[46] *Barrett v. Chevron, U.S.A., Inc.*, 752 F.2d 129, 132 (5th Cir. 1985).
[47] *Buras v. Commercial Testing & Eng'g Co.*, 736 F.2d 307, 309 (5th Cir. 1984); *Chandris*, 515 U.S. at 369. *Cf. Landry v. Amoco Production Co.*, 595 F.2d 1070 (5th Cir. 1979) (reversing district court's denial of plaintiff's motion for a directed verdict because "the facts governing plaintiff's status as a seaman were established beyond cavil"); *White v. Valley Line Co.*, 736 F.2d 304, 305 (5th Cir. 1984) ("[T]he issue of seaman status is ordinarily a jury question, even when the claim to seaman status is marginal.").
[48] *Id. See also, e.g., Prinzi v. Keydril Co.*, 738 F.2d 707, 709 (5th Cir. 1984) (finding the parties agreed the relevant facts were not in dispute and reasonable persons could not have differed with respect to the inferences drawn from those facts).
[49] *Sanchez v. Smart Fabricators of Texas, L.L.C.*, 997 F.3d 564, 569 (5th Cir. 2021) (en banc).

been left to the courts."⁵⁰ In *Chandris, Inc. v. Latsis*, the Supreme Court established a two-pronged test to determine whether a party is a seaman under the Jones Act.⁵¹ "To be a seaman: (1) the plaintiff's duties must contribute to the function or mission of the vessel, and (2) the plaintiff must have a connection to the vessel or fleet of vessels that is substantial in duration and nature."⁵² The first prong is "very broad"—the Court clarified "[a]ll who work at sea in the service of a ship are *eligible* for seaman status."⁵³

The fundamental purpose of the second prong is "to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea."⁵⁴ "In deciding whether there is an identifiable group of vessels of relevance" under the second prong, "the question is whether the vessels are subject to common ownership or control."⁵⁵ When evaluating the "substantial in duration" requirement of the second prong, the *Chandris* Court instructed: "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."⁵⁶

In this case, the parties do not dispute that Plaintiff Rak's work aboard the ISLAND PERFORMER satisfies *Chandris*' first prong, which requires "the plaintiff's duties [] contribute to the function or mission of the vessel."⁵⁷ Nor do the parties dispute that Rak satisfied the "substantial in duration" requirement of *Chandris*' second prong,

---

⁵⁰ *In re Endeavor Marine Inc.*, 234 F.3d at 290.
⁵¹ 515 U.S. at 376.
⁵² *Santee v. Oceaneering International, Inc.*, 95 F.4th 917, 925 (5th Cir. 2024) (citing *Chandris*, 515 U.S. at 368).
⁵³ *Chandris*, 515 U.S. at 368 (emphasis in original; citation omitted).
⁵⁴ *Id.*
⁵⁵ *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 557 (1997).
⁵⁶ *Chandris*, 515 U.S. at 371.
⁵⁷ *Santee*, 95 F.4th at 925 (citing *Chandris*, 515 U.S. at 368).

which requires "the plaintiff [] have a connection to the vessel or fleet of vessels that is substantial in duration."[58]

II. **Rak will be unable to establish at trial that he had a connection to the ISLAND PERFORMER that was substantial in nature; The undisputed material facts establish that Rak owed allegiance to his land-based employer and was assigned to the ISLAND PERFORMER to perform a discrete task.**

The parties disagree only as to whether Rak satisfied the second prong of the *Chandris* analysis that he had a connection to the vessel that was substantial in nature. While the *Chandris* Court did not identify a bright line rule with respect to the "substantial in nature" component of the second prong, the Court noted "courts should not employ 'a snapshot test for seaman status, inspecting only the situation as it exists at the instant of injury[,] [as] a more enduring relationship is contemplated in the jurisprudence.'"[59] Indeed, "the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea."[60] As such, "a worker may not oscillate back and forth between Jones Act coverage and other remedies depending on the activity in which the worker was engaged while injured."[61]

The Fifth Circuit has clarified that the "substantial in nature" inquiry must consider the plaintiff's "service, his status as a member of the vessel, and his relationship as such to the vessel and its operations in navigable waters," rather than focusing on where the injury occurred, the particular work being performed at the moment of injury, or the plaintiff's job title.[62] Observing that "seamen and non-seamen maritime workers may face similar risks and perils," the *en banc* Fifth Circuit instructed

---

[58] *Id.* (citing *Chandris*, 515 U.S. at 368).
[59] *Chandris*, 515 U.S. at 363 (citing *Easley v. Southern Shipbuilding Corp.*, 965 F.2d 1, 5 (5th Cir. 1992)).
[60] *Papai*, 520 U.S. at 555.
[61] *Chandris*, 515 U.S. at 363.
[62] *Naquin v. Elevating Boats, LLC*, 842 F.Supp.2d 1008, 1016 (E.D. La. Jan. 3, 2012) (citing *Chandris*, 515 U.S. at 359-60; *Swanson v. Marra Bros.*, Inc., 328 U.S. 1 (1946)).

9

district courts to undertake three "additional inquiries" when resolving the "substantial in nature" element in *Sanchez v. Smart Fabricators of Texas, L.L.C.*:

> (1) Does the worker owe his allegiance to the vessel, rather than simply to a shoreside employer?
>
> (2) Is the work sea-based or involve seagoing activity?
>
> (3) (a) Is the worker's assignment to a vessel limited to performance of a discrete task after which the worker's connection to the vessel ends, or (b) Does the worker's assignment include sailing with the vessel from port to port or location to location?[63]

While "it is not entirely clear" whether *Sanchez* "set forth mandatory elements . . . intended [to] be treated as indicia or [as] factors to be weighed,"[64] when applying the *Sanchez* test, courts in the Fifth Circuit weigh the factors to determine whether plaintiffs satisfy *Chandris*' "substantial in nature" element.[65]

In their Motion for Summary Judgment, Defendants do not dispute the second *Sanchez* factor, that the work performed by Rak was sea-based or involved a seagoing activity. Instead, Defendants argue "Plaintiff cannot prove that he had a connection to a vessel or fleet of vessels that was substantial in nature" under *Chandris*.[66] Specifically, Defendants claim Rak cannot present evidence to satisfy the first and third *Sanchez* factors because, "[a]t the time of the subject incident, Plaintiff fell into the class of specialized transient workers who ultimately owed his allegiance to his shoreside employer," Defendant C-I, rather than to the ISLAND PERFORMER or a fleet of vessels under common ownership.[67] In support, Defendants cite a recent opinion of the Fifth Circuit, *Santee v. Oceaneering International, Inc.*, in which the Fifth Circuit applied he

---

[63] *Sanchez*, 997 F.3d at 574.
[64] *Sanchez v. Am. Pollution Control Corp.*, 542 F. Supp. 3d 446, 454 (E.D. La. 2021).
[65] *See, e.g., Matter of Ingram Barge Co., L.L.C.*, 22-30577, 2023 WL 6123107, at *6 (5th Cir. 2023); *Santee*, 95 F.4th at 927-28.
[66] R. Doc. 37-1 at p. 8.
[67] *Id.*

10

*Sanchez* factors to evaluate whether a plaintiff, employed as an ROV technician by a land-based third-party contractor that neither owned nor operated the drill ship on which the plaintiff worked, was a seaman.[68] In *Santee*, the Fifth Circuit concluded the plaintiff failed "to establish allegiance to the vessel" or that he was "*permanently* assigned to work aboard" the vessel, even though he "spen[t] nearly all of his total employment time" aboard the vessel on 21- to 28-day hitches during the five-year period leading up to his alleged injury, which occurred aboard the vessel.[69] In reaching that conclusion, the *Santee* court found the plaintiff was "a transient employee of a contractor to [the] vessel," who performed services on behalf of his land-based employer, rather than "an entrenched crewmember of the vessel."[70]

Pointing to deposition testimony of Richard Bourque, Defendants in this case claim Plaintiff Rak's job title and duties were "nearly identical" to the ROV technician in *Santee* and argue Rak, similarly, owed allegiance to his shoreside employer, Defendant C-I, rather than to the vessel where he worked, the ISLAND PERFORMER.[71] Defendants argue that, like the plaintiff in *Santee*, Rak "worked for C-I, a third party contractor, as a specialized transient worker aboard a vessel that his employer did not own to fulfill that employer's obligations under a specific contract," even though he "spent the majority of his time working aboard a single vessel."[72] Defendants further claim the third *Sanchez* factor weighs against Rak, because Rak was a "transient specialized worker whose

---

[68] *Santee*, 95 F.4th 917.
[69] *Santee*, 95 F.4th at 928 ("Just as in *Sanchez*, where a transient employee of a contractor to a vessel spends nearly all of his total employment time with the vessel, that alone is not enough to satisfy the nature prong of the Jones Act seaman inquiry.").
[70] *Id.* at 927-28.
[71] R. Doc. 37-1 at p. 11 (citing Decl. of Richard Bourque, R. Doc. 37-2 at ¶¶ 11-12, 18, 20-21).
[72] *Id.* (citing *Santee*, 95 F.4th at 928).

presence on any one vessel was limited to the performance of discrete tasks pursuant to C-I's contract."[73]

In opposition, Plaintiff Rak urges the Court to find that he "owed and served an allegiance" to the ISLAND PERFORMER even though he was employed by a third-party contractor, Defendant C-I.[74] Plaintiff first attempts to draw a comparison to a recent opinion of another court in this district, *Barlow v. BP Exploration & Production, Inc.*[75] In *Barlow*, Judge Eldon E. Fallon found a plaintiff employed by a shoreside contractor owed an allegiance to the vessel on which he worked when "he sailed with the vessel, *he cleaned the vessel*, he ate and slept on the vessel, and his job was essential to the completion of the vessel's mission."[76] The *Barlow* plaintiff's primary responsibility aboard the vessel was to collect oiled booms and bags as part of an oil spill clean-up operation and he presented evidence that he washed the deck of the boat every morning.[77] Plaintiff Rak argues that, like the plaintiff in *Barlow*, Rak "had an allegiance to the vessel, and not solely his [shoreside] employer," because he "ate, slept, worked, and lived on the vessel throughout the entirety of each of his [28-day] hitches," during which he "would travel to different locations to perform offshore support services."[78] Unlike the plaintiff in *Barlow*, who washed the deck of the vessel each morning, however, Rak does not present any summary judgment evidence that demonstrates he performed any tasks in service to the vessel beyond those related to his ROV technician role.[79]

---

[73] *Id.* at p. 12 (citing Decl. of Richard Bourque, R. Doc. 37-2 at ¶¶ 18, 20-21).
[74] R. Doc. 43 at p. 6.
[75] 620 F. Supp. 3d 475, 479 (E.D. La. 2022) (emphasis added).
[76] R. Doc. 43 at p. 6 (citing *Barlow*, 620 F. Supp. 3d 475).
[77] *Barlow*, 620 F. Supp. 3d at 479.
[78] R. Doc. 43 at at p. 7.
[79] *See* R. Doc. 43.

Next, Plaintiff attempts to rebut the Defendants' reliance on *Santee* as "easily distinguishable from this case."[80] Plaintiff cites deposition testimony of C-I employee Roger Clay,[81] in which Clay testifies "Rak was assigned *only* to the OSV ISLAND PERFORMER during his entire employment [with C-I] and performed 100% of his work aboard that same vessel," and "was supervised by C-I employees who were also assigned and worked aboard the same vessel."[82] Plaintiff contends, these facts evidence Rak's allegiance to the ISLAND PERFORMER rather than his shoreside employer, C-I.[83]

Rak further argues that he satisfies the third *Sanchez* factor because his "assignment to the [ISLAND PERFORMER] was not limited to simply performing discrete tasks, and he sailed with the vessel to different locations as it performed its offshore services."[84] Plaintiff attempts to draw comparison to another recent opinion of a court in this district, *Cole v. Oceaneering International, Inc.*[85] In *Cole*, Judge Wendy Vitter determined a crane operator employed by a shoreside employer satisfied the first and third *Sanchez* factors when summary judgment evidence established his assignment to the vessel was "permanent, as contemplated by the Jones Act" and both the plaintiff

---

[80] *Id.*
[81] *See* R. Doc. 43-2.
[82] R. Doc. 43 at pp. 8-9. Plaintiff also argues that, unlike *Santee*, "Rak's employer (C-I) and the vessel owner (Island Ventures) operate as affiliates under the umbrella of and/or as a part of the Edison Chouest Offshore . . . family of companies." *Id.* at p. 9. Rak points to deposition testimony of C-I employees Roger Clay and Kevin Evans, as well as Louisiana Secretary of State records, to support his allegation that Defendants C-I and Island ventures operate within a "single business enterprise." R. Doc. 43-1 at ¶¶ 3-4. Rak contends it is "disingenuous to argue Mr. Rak had no allegiance to the vessel, when the vessel owner's principal place of business is the same office as Mr. Rak's employer." *Id.* Considering Plaintiff's evidence on this issue in the light most favorable to him, the Court finds the evidence does not raise a genuine issue of material fact as to whether Rak owed allegiance to the ISLAND PERFORMER or a fleet of vessels under common ownership. Indeed, the parties agree that Plaintiff Rak was never employed by Island Ventures. *See* R. Doc. 43-1 at ¶ 9. Even if he had been, Plaintiff's opposition acknowledges "the longstanding principle that '[a] seaman's Jones Act employer need not be the owner of the vessel or vessels of which the seaman is a member of the crew.'" R. Doc. 43 at p. 8 (quoting *Wallace v. Oceaneering Intern.*, 727 F.2d 427, 433 (5th Cir. 1984). Accordingly, even if Rak established this created a genuine dispute of fact, it would not affect the Court's determination of the first *Sanchez* factor.
[83] *See* R. Doc. 43.
[84] *Id.* at p. 11.
[85] 681 F. Supp. 3d 568 (E.D. La. 2023).

13

and a corporate representative of his shoreside employer testified the plaintiff "meld[ed] in and function[ed] as part of the [vessel] crew."[86] Unlike the plaintiff in *Cole*, however, the evidence presented by Rak is that he was not a member of the crew, he was accountable only to C-I employees, and he did not "meld in and function as part" of the ISLAND PERFORMER's crew.[87]

In their reply, the Defendants argue Plaintiff fails to present "competent evidence to rebut summary judgment" based on the first and third *Sanchez* factors.[88] Defendants contend the distinctions Plaintiff raises between this case and *Santee* are immaterial "to the nature element of the seaman test."[89] Defendants further argue "Plaintiff presented no evidence that his job duties and role on the vessel were any different than those of the ROV technician in *Santee*," or that he "reported to or took any directions from the vessel's captain or crew."[90] Instead, Defendants point to deposition testimony of Roger Clay to demonstrate Rak "reported to C-I's ROV Supervisors and to ROV Superintendent [Roger] Michael Clay, who ultimately reported to CI's shoreside management team."[91]

The Court agrees with the Defendants that Plaintiff Rak fails to satisfy his burden on summary judgment of presenting evidence that "he had a connection to a vessel [or fleet of vessels] that was substantial in nature."[92] First, the Plaintiff has not distinguished this case from *Santee*. The facts in this case are substantially similar to those in *Santee*, in which the Fifth Circuit determined an ROV technician, employed by

---

[86] *Id.* at 585-86.
[87] *See* R. Doc. 37-5 at ¶ 10; R. Doc. 43-1 at ¶ 10; *see also Cole*, 681 F. Supp. 3d at 585-86.
[88] *See* R. Doc. 50 at p. 1.
[89] *Id.* at p. 2 (citing *Santee*, 95 F.4th at 928).
[90] *Id.* at p. 4.
[91] *Id.* (citing Dep. Tr. of Roger Michael Clay, R. Doc. 50-3 at pp. 5-9).
[92] *See id.* at p. 1.

a land-based contractor that neither owned nor operated the vessel from which the plaintiff worked, failed to establish the first *Sanchez* prong even though he spent "nearly all" of his employment with the vessel.[93] "Just as in *Sanchez* [and *Santee*], where a transient employee of a contractor to a vessel spends nearly all of his total employment time with the vessel, that alone is not enough to satisfy the nature prong of the Jones Act seaman inquiry."[94]

Plaintiff Rak submits no summary judgment evidence demonstrating his circumstances were different from those of the plaintiff in *Santee*. Rak merely argues his case is distinguishable from *Santee* because he performed all of his work aboard the ISLAND PERFORMER and was supervised by C-I employees who were assigned to and worked on the vessel.[95] These facts, alone, do not distinguish this case from *Santee*. In *Santee*, the Fifth Circuit instructed district courts evaluating the first *Sanchez* prong to refrain from considering "duration of service on one vessel as evidence of allegiance to that vessel."[96] Thus, the fact that Rak performed all of his work on the ISLAND PERFORMER is irrelevant to the allegiance inquiry. Further, the fact that Rak was supervised by fellow C-I employees aboard the ISLAND PERFORMER demonstrates that, unlike the plaintiff in *Cole*, Rak did not take orders "from the vessel" or otherwise "meld in and function as part of the [vessel] crew."[97] Instead, Rak was accountable only to C-I supervisors, who the parties agree were *not* members of the ISLAND PERFORMER's crew.[98]

---

[93] *Santee*, F.4th at 928.
[94] *Id.*
[95] R. Doc. 43 at pp. 8-9.
[96] *Santee*, F.4th at 928.
[97] *Cole*, 681 F. Supp. 3d 568, 586 (E.D. La. 2023).
[98] R. Doc. 37-5 at ¶ 10; R. Doc. 43-1 at ¶ 10.

15

Second, the Court finds that the Plaintiff does not present any summary judgment evidence to demonstrate he was permanently assigned to the ISLAND PERFORMER or executed tasks beyond those related to his ROV technician position. In reaching this conclusion, the Court again looks to the parallels between this case and *Santee*, which characterized the job duties of the plaintiff ROV technician in that case as "transient" and "specialized" in nature when his "work record show[ed] that he was never *permanently* assigned to work aboard any one vessel or fleet of vessels."[99] Plaintiff Rak has not shown his circumstances differ from those of the plaintiff in *Santee* with respect to the third *Sanchez* factor. Instead, Rak simply reiterates that "[h]e slept, ate, and lived on the vessel during the entirety of his 28-day hitches . . . [and] would stay on the vessel as it traveled to different locations offshore of Guyana."[100] These facts simply do not establish his connection to the ISLAND PERFORMER was substantial in nature.

Plaintiff additionally cites *Barlow* to support his assertion that the third *Sanchez* prong weighs in his favor. In *Barlow*, Judge Fallon found the plaintiff, whose primary responsibility aboard a vessel was to collect oiled booms and bags as part of an oil spill clean-up operation, "was not simply performing discrete tasks" because another court in this district found that a plaintiff with the same "job consisting of handling boom while on a vessel and going to different locations with the vessel," was "not discrete" within the meaning of the third *Sanchez* prong.[101] Also relevant to the *Barlow* court was the fact that plaintiff presented summary judgment evidence demonstrating "he had to wash the back deck of the boat" every morning and "was involved in making sure the

---

[99] *Santee*, F.4th at 928.
[100] R. Doc. 43 at p. 12.
[101] *Barlow*, 620 F. Supp. 3d at 480 (citing *Am. Pollution Control Corp.*, 542 F. Supp. 3d at 456).

16

[vessel] was clean."[102] In this case, this Court is bound to the Fifth Circuit's determination that the third *Sanchez* prong weighs against an ROV technician who is "assigned as a transitory worker limited to the performance of a discrete task."[103] Because Plaintiff presents no summary judgment evidence that demonstrates he performed tasks beyond those relevant to his job and duties as an ROV technician, or otherwise "meld[ed] in and function[ed] as part of the [vessel] crew,"[104] the Court finds that Rak's connection to the ISLAND PERFORMER was not substantial in nature under *Sanchez*.

If reasonable persons could draw conflicting inferences, seaman status is a question for the jury and summary judgment must be denied.[105] Nevertheless, summary judgment is proper when the underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw conflicting inferences about whether the claimant is a Jones Act seaman.[106] In this case, the material underlying facts are undisputed. The record reveals no evidence from which reasonable persons might draw the conclusion that Plaintiff is a Jones Act seaman. Defendants are therefore entitled to summary judgment on the issue of seaman status. Because the parties agree all of Rak's claims are based on the premise that he was a seaman under the Jones Act at

---

[102] *Id.* at 479.
[103] *Santee*, 95 F.4th at 927-28.
[104] *Cole*, 681 F. Supp. 3d at 586.
[105] *Buras v. Commercial Testing & Eng'g Co.*, 736 F.2d 307, 309 (5th Cir. 1984); *Chandris*, 515 U.S. at 369. *Cf. Landry v. Amoco Production Co.*, 595 F.2d 1070 (5th Cir. 1979) (reversing district court's denial of plaintiff's motion for a directed verdict because "the facts governing plaintiff's status as a seaman were established beyond cavil"); *White v. Valley Line Co.*, 736 F.2d 304, 305 (5th Cir. 1984) ("[T]he issue of seaman status is ordinarily a jury question, even when the claim to seaman status is marginal.").
[106] *Id. See also, e.g., Prinzi v. Keydril Co.*, 738 F.2d 707, 709 (5th Cir. 1984) (finding the parties agreed the relevant facts were not in dispute and reasonable persons could not have differed with respect to the inferences drawn from those facts).

the time of his alleged injury,[107] judgment will be granted against Plaintiff Rak and in favor of the Defendants on all of Rak's claims.

Accordingly;

## CONCLUSION

**IT IS ORDERED** that the Defendants' Motion for Summary Judgment is **GRANTED**.[108]

**New Orleans, Louisiana, this 17th day of May, 2024.**

*[Signature: Susie Morgan]*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[107] 46 U.S.C. § 30104 *et seq.*; *see* R. Doc. 8; R. Doc. 37-5 at ¶ 16; R. Doc. 43-1 at ¶ 16.
[108] R. Doc. 37.