UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KYLE RAK,** <br>     **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-619** |
| **C-INNOVATION, L.L.C., ET AL.,** <br>     **Defendants** | **SECTION: "E" (3)** |

### ORDER AND REASONS

Before the Court is a Motion to Exclude Plaintiff's expert witness Joseph R. Bridges ("Mr. Bridges") filed by Defendants C-Innovation, L.L.C. ("C-I"), Island Ventures 6, L.L.C., and Galliano Marine Services International, L.L.C. (collectively, "Defendants").[1] Plaintiff Kyle Rak ("Plaintiff") filed an opposition.[2] Defendants filed a reply.[3]

### BACKGROUND

On October 10, 2022, Plaintiff was employed by Defendant C-I as a Jones Act seaman.[4] Plaintiff alleges he sustained personal injury on October 10, 2022 after his superintendent "suddenly, and without warning or provocation, assaulted and shoved [him] to the ground."[5] Plaintiff further claims that C-I wrongfully abandoned him in a dangerous jurisdiction and terminated his employment the day after the incident.[6] On February 17, 2023,[7] Plaintiff filed this lawsuit under general maritime law and the Jones

---

[1] R. Doc. 36.
[2] R. Doc. 44.
[3] R. Doc. 51.
[4] R. Doc. 8 at p. 3.
[5] *Id.* Rak alleges he suffered, "among other injuries, a blow to the head, loss of consciousness, concussion and a broken right wrist." *Id.*
[6] *Id.* at pp. 6-7.
[7] R. Doc. 1.

1

Act asserting counts of negligence, unseaworthiness, for maintenance and cure, and for retaliatory discharge and wrongful termination.[8]

On April 9, 2024, the Defendants moved for summary judgment and filed the instant Motion to Exclude.[9] On May 17, 2024, the Court granted Defendant's motion for summary judgment and entered judgment in favor of Defendants.[10] The Court's order and judgment terminated Defendant's Motion to Exclude as moot.[11] On June 13, 2024, Plaintiff moved the Court to reconsider its ruling on Defendant's motion for summary judgment and filed a notice of appeal.[12] On August 22, 2024, the Court granted Plaintiff's motion for reconsideration, vacated its order granting Defendant's motion for summary judgment, and denied Defendant's motion for summary judgment upon reconsideration.[13]

On June 17, 2025, Defendant moved the Court to re-set the Motion to Exclude for submission.[14] The Court granted Defendant's motion and re-set the Motion to Exclude for submission.[15]

Plaintiff represents that he engaged his expert, Mr. Bridges, "to provide expert testimony regarding the unique standards and customs that apply to maritime workers overseas including the [International Maritime Organization ("IMO")] guidelines, general maritime employment principles, and the unique standards and customs against seafarer abandonment in the maritime industry."[16] Plaintiff argues that Mr. Bridges

---

[8] R. Doc. 8 at pp. 5-9.
[9] R. Doc. 36; R. Doc. 37.
[10] R. Doc. 56; R. Doc. 57.
[11] *See* R. Doc. 73; R. Doc. 75.
[12] R. Doc. 58; R. Doc. 59.
[13] R. Doc. 66.
[14] R. Doc. 73.
[15] R. Doc. 75.
[16] R. Doc. 44 at pp. 3-4.

2

"issued a report explaining the concept of seafarer abandonment, the IMO guidelines (and the conventions which the IMO guidelines inspired, namely the Maritime Labour Convention, 2006), and Mr. Bridges' opinions on whether Defendants failed to act within the guidelines and the traditional standards, customs, and practices regarding seafarer abandonment."[17]

## LEGAL STANDARD

### I. Motion in Limine Standard

"It is well settled that motions in limine are disfavored."[18] "[T]he purpose of a motion in limine is to prohibit opposing counsel 'from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' mind.'"[19] "Evidence is relevant" if "it has *any* tendency to make a fact . . . of consequence in determining the action" "more or less probable than it would be without the evidence."[20] "Evidence which is not relevant is not admissible."[21] Under Federal Rule of Evidence 403, the Court may exclude even relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice."[22] "'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[23]

---

[17] *Id.* at p. 4.
[18] *Auenson v. Lewis*, No. 94-2734, 1996 WL 457258, at *1 (E.D. La. Aug. 12, 1996) (citing *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)).
[19] *MGMTL, LLC v. Strategic Tech.*, No. 20-2138, 2022 WL 594894, at *2 (E.D. La. Feb. 28, 2022).
[20] FED. R. EVID. 401 (emphasis added).
[21] FED. R. EVID. 402.
[22] FED. R. EVID. 403.
[23] *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

"An order in limine excludes only clearly inadmissible evidence; therefore evidence should not be excluded before trial unless it is clearly inadmissible on *all* potential grounds."[24] Instead, courts should reserve evidentiary rulings until trial so that questions as to the evidence "may be resolved in the proper context."[25] "When ruling on motions in limine, the Court 'maintains great discretion [as to] evidentiary determinations.'"[26] If the evidence is not clearly inadmissible on all grounds, it is better for the court to decline to rule in advance of trial so that it will have the opportunity to resolve issues in context.

## II. Federal Rule of Evidence 702 Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[27]

Testimony from a *qualified* expert is admissible only if it is both relevant and reliable.[28] Thus, the threshold inquiry is whether the expert witness possesses the requisite qualifications to render an opinion on particular subject matter.[29]

---

[24] *Rivera v. Robinson*, 464 F. Supp. 3d 847, 853 (E.D. La. 2020) (quoting *Auenson*, 1996 WL 457258, at *1)).
[25] *Auenson*, 1996 WL 457258, at *1.
[26] *Jackson v. State Farm Fire & Cas. Co.*, 656 F. Supp. 3d 676 (W.D. La. 2023) (quoting *Parker v. John W. Stone Oil Distribs., L.L.C.*, No. 18-3666, 2019 WL 5212285, at *2 (E.D. La. Oct. 16, 2019)).
[27] FED. R. EVID. 702.
[28] *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).
[29] *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 798 (E.D. La. 2011); s*ee also Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert to testify if it finds that the witness is not qualified to testify in a particular field or a given subject.").

If the expert's qualifications are found to be sufficient, the court must then examine whether the expert's opinions are reliable and relevant.[30] The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[31] provides the analytical framework for determining whether expert testimony is admissible under Rule 702. "Under *Daubert*, Rule 702 charges trial courts to act as 'gate-keepers,' making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid,'"[32] and of whether that reasoning or methodology "can be reliably applied to the facts of the case."[33] The party offering the expert opinion must show by a preponderance of the evidence that the expert's testimony is reliable and relevant.[34]

"[E]xpert testimony proffered" must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."[35] This is essentially a relevance requirement.[36] With respect to the proper scope of expert testimony, Rule 704 provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."[37] Nevertheless, "[i]f the expert's testimony brings no more to the finder of fact than the lawyers can offer in argument, the expert's opinions should be excluded."[38]

---

[30] *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).
[31] 509 U.S. 579 (1993).
[32] *See Pipitone*, 288 F.3d at 243-44 (quoting *Daubert*, 509 U.S. at 592-93).
[33] *Valencia*, 600 F.3d at 423-24; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). *See also Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004); *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584–85 (5th Cir. 2003).
[34] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002).
[35] *Denley v. Hartford Ins. Co. of Midwest*, No. 07-4015, 2008 WL 2951926, at *3 (E.D. La. July 29, 2008) (citing *Daubert*, 509 U.S. at 591).
[36] *Cunningham v. Bienfang*, 2002 WL 31553976 (N.D. Tex. Nov. 15, 2002).
[37] FED. R. EVID. 704.
[38] *Sudo Properties, Inc. v. Terrebone Parish Consol. Gov't*, No. 04-2559, 2008 WL 2623000, at *8 (E.D. La. July 2, 2008).

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact.[39] Thus, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[40] The Court is not concerned with whether the opinion is correct, but whether the preponderance of the evidence establishes that the opinion is reliable.[41] "It is the role of the adversarial system, not the court, to highlight weak evidence."[42]

Rule 702 requires an expert to base his or her testimony on "sufficient facts or data." This requires exclusion of opinions based on "insufficient, erroneous information."[43] But experts may rely on one version of a disputed fact, and "reliable expert testimony often involves estimation and reasonable inferences from a sometimes incomplete record."[44] Thus, the presence of unknown variables in an expert's opinion do not necessarily render that opinion unreliable or unhelpful to the jury.[45]

## **LAW AND ANALYSIS**

Mr. Bridges offers sixteen opinions:

1. Operations Manager Tony Santos and C-I sent Kyle Rak a notice of Termination of Employment while he was at the Hotel after returning from the Hospital without a complete and proper investigation to determine the true accounting of the facts, and callously cancelled Kyle Rak's Hotel Reservation, Transportation to the Airport and Airline Ticket.

---

[39] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).
[40] *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596).
[41] *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).
[42] *Primrose*, 382 F.3d at 562.
[43] *See Moore v. Int'l Paint, L.L.C.*, 547 Fed. App'x 513, 515 (5th Cir. 2013) (quoting *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009)).
[44] *See id.* at 515-16.
[45] *See Bocanegra*, 320 F.3d at 589-90.

6

2. C-I and Kevin Evans denied Kyle Rak necessary medical attention and disregarded the Hospital Doctor's recommendation that Kyle Rak required surgery on the broken right wrist as well as a CT Scan to determine the extent of his head injuries.

3. It was the responsibility of C-I to arrange all lodging and transportation for Kyle Rak's repatriation to his home in the USA.

4. The termination of Kyle Rak in the Hotel hours after he was sent to the hospital with injuries to his head, loss of consciousness and a broken right wrist without a complete and proper investigation is outrageous at the very least and demonstrates a callous disregard for the Offshore Workers employed by C-I.

5. Offshore Workers with C-I routinely consume alcohol when staying at the SleepInn Hotel and Casino.

6. Michael Clay had been drinking at the bar and he initiated an altercation resulting in Kyle Rak hitting the deck; and he was not terminated for Drug and Alcohol Policy Violation, Improper Conduct and Violation of Company Policies, Rules, Regulations or Procedures.

7. Tony Santos used information from Michael Clay as a basis for the hasty and callous termination of Kyle Rak.

8. Michael Clay testified that he did not advise his superiors of the altercation with Kyle Rak and there is no factual evidence to support that Kyle Rak lunged at Michael Clay.

9. There is no factual evidence to support what information Kevin Evans allegedly received from Hotel staff.

10. Michael Clay misrepresented the facts in an attempt to deflect criticism from his superiors for his part in the incident.

11. C-I's response and termination of Kyle Rak on 10/11 October 2022, demonstrates a callous and unprofessional disregard for Kyle Rak who was put in harm's way by C-I.

12. Abandonment occurs when the shipowner fails to fulfill certain fundamental obligations to the seafarer relating to timely repatriation and payment of outstanding remuneration and to the provision of basic necessities of life, inter alia, adequate food, accommodation, and medical care.

13. There is no justification to abandon an injured Offshore Worker in a dangerous foreign location, specifically without a full understanding of all facts relevant to the incident.

14. There was no honesty, integrity and respect when Kyle Rak was terminated and abandoned in Georgetown, Guyana.

15. C-I and ECO did tolerate the wrongdoing or impropriety of Tony Santos and Michael Clay and there was no accountability for their work and actions.

16. Consuming alcohol while at the Hotel that was arranged by the company is not against the law and terminating one individual, but not all, for consuming alcohol under the pretext "while any employee is within the course and scope of his/her employment" is a convenient overreach, not consistent with industry best practice and ethically wrong.[46]

Defendants argue the Court should exclude all Mr. Bridges' opinions except for his third opinion.[47] Defendants do not question Mr. Bridges' qualifications as an expert in maritime employment standards and customs but instead question Mr. Bridges' methodology and whether his opinions invaded the province of the jury.[48]

**Testimony on Opinions 1, 4, 7, 11, 14 and 16 will not be allowed.**

In these opinions, Mr. Bridges used terminology such as "outrageous," "callous," "unprofessional," and "ethically wrong" to describe Defendants' conduct.[49] The Defendants argue these opinions attempt to vilify the Defendants while having no probative value and not being based on any specialized expertise.[50] The Court agrees. Such terms "are inadmissible personal opinion that is beyond the proper scope of expert testimony."[51] The characterizations of the Defendants as dishonest, callous, unprofessional, and lacking in integrity have no place in any expert opinion. Mr. Bridges

---

[46] R. Doc. 36-9 at pp. 9-10.
[47] R. Doc. 36-1.
[48] *Id.* at pp. 8-18.
[49] R. Doc. 36-9 at pp. 9-10.
[50] R. Doc. 36-1 at p. 13.
[51] *Scanlan v. Sunbeam Prods., Inc.*, No. 12-9, 2015 WL 10711206, at *23 (W.D. Ky. Sept. 1, 2015).

invades the province of the jury through use of this inflammatory terminology intended to prejudice the Defendants. The jury will make its own decisions as to the reasonableness of Defendants' actions. References to Defendants' actions as "outrageous," "callous," and "unprofessional" are overly prejudicial and offer little, if any, probative value. To the extent Mr. Bridges' opinions include these scurrilous characterizations, they will be excluded. This accounts for the entirety of opinions 11 and 14 and for parts of opinions 1, 4, 7, and 16. [52] The remainder of opinions 1, 4, 7, and 16 are merely regurgitations of the Plaintiff's version of the facts or legal conclusions and are excluded as well.

**<u>Testimony on opinions 3, 12, and 13 will be allowed.</u>**

Defendants did not object to opinion 3.[53] Defendants argued that opinions 12 and 13 are excludable because Mr. Bridges based them on "wholly inapplicable standards and regulations,"[54] namely the non-binding Maritime Labour Convention ("MLC") and International Labour Organization/IMO guidelines.[55]

"[E]xpert testimony analyzing the conduct of the various parties with respect to various applicable rules and regulations may assist the trier of fact without crossing the line into impermissible legal conclusions."[56] "Qualified experts are permitted to offer

---

[52] In addition, these opinions include findings of fact that must be left to the jury. For example, opinion 14 includes a finding of fact that the Plaintiff was abandoned in Guyana. R. Doc. 36-9 at p. 9. These opinions are not allowed for this reason as well.
[53] R. Doc. 36-1.
[54] *Id.* at pp. 17-18.
[55] *Id.*
[56] *Ponds v. Force Corp.*, No. 16-1935, 2016 WL 7178483, at *3 (E.D. La. Dec. 8, 2016); *see also Bergeron v. Great Lakes Dredge & Dock Co.*, No. 17-0002, 2018 WL 4924021, at *1, *3 (W.D. La. Oct. 9, 2018) (allowing expert testimony on the standard of care for issues within the expert's expertise and whether the parties met that standard); *Diamond Offshore Co. v. Survival Sys. Intern., Inc.*, No. 11-1701, 2013 WL 371648, at *7-8 (S.D. Tex. Jan. 29, 2013) ("The court finds that these opinions are relevant and reliable. [The expert] based these opinions on facts in the record as well as his years of experience."); *Toisa Ltd. v. CAMAC Intern. Corp.*, No. 10-04177, 2011 WL 6176207, at *3 (S.D. Tex. Nov. 30, 2011) ("Professor Weiss in his report, moreover, does not offer unreasoned conclusory statements but draws upon his specialized knowledge to explain the reasons and bases for his conclusions."); *In re Horizon Vessels, Inc.*, No. 03-3280, 2007 WL 655927, at *7 (S.D. Tex. Feb. 28, 2007) (agreeing that admitting expert's opinion on "barge's equipment,

9

opinion testimony as to industry standards or norms and whether or not they were followed in a particular case, as long as such opinions involve questions of fact rather than purely legal matters."[57] Courts routinely allow experts to testify about the ordinary practices and usages of a specific industry, while barring testimony that states a legal conclusion.[58] An expert may provide testimony to assess safety standards.[59]

Mr. Bridges may provide expert testimony on the maritime industry standards and customs regarding seafarer abandonment, and whether Defendants' actions deviated from those standards. Such testimony is warranted in this case to assist the jury in understanding the unique principles and standards surrounding seafarer abandonment in the maritime industry.

In his report, Mr. Bridges references IMO guidelines to support his opinions on maritime industry standards and customs against seafarer abandonment.[60] According to

---

the training of barge personnel, the ordinary course and practice in the industry, and the contractors' responsibilities will assist . . . in determining liability.").
[57] *Am. Can! v. Arch Ins. Co.*, 597 F. Supp. 3d 1038, 1047-48 (N.D. Tex. 2022) (collecting cases); *see also Waco Int'l, Inc. v. KHK Scaffolding Houston, Inc.*, 278 F.3d 523, 533 (5th Cir. 2002) ("Although a lawyer may not testify as to purely legal matters, he or she may testify as to legal matters that involve questions of fact.").
[58] *Am. Can!*, 597 F. Supp. 3d at 1047-48 (collecting cases); *see also Beneplace, Inc. v. Pitney Bowes, Inc.*, No. 15-65, 2016 WL 11582931, at *4 (W.D. Tex. Sept. 20, 2016) ("It is clear from Beck's report that much of his purported testimony relates to customs, standards, and practices in the insurance industry—topics which are appropriate for expert testimony. As it stands, Defendants ask the court to strike the entire report; such relief is much too broad to cure whatever specific issues may exist therein."); *Mears v. Jones*, No. 17-6, 2019 WL 3483157, at *1 (S.D. Miss. July 31, 2019) (internal citation omitted) ("Although parties are free to offer expert testimony as to the customs or standards in an industry or profession, no expert will be permitted to provide legal opinions or instructions of law masquerading as testimony about insurance industry practices or customs."); *Travelers Indem. Co. of Ill. v. Royal Oak Enterprises, Inc.*, No. 02-58, 2004 WL 3770571, at *2 (M.D. Fla. Aug. 20, 2004) ("[W]here, as here, the substance of the expert's testimony concerns ordinary practices and trade customs which are helpful to the fact-finder's evaluation of the parties' conduct against the standards of ordinary practice in the insurance industry, his passing reference to a legal principle or assumption in an effort to place his opinions in some sort of context will not justify the outright exclusion of the expert's report in its entirety.").
[59] *See, e.g.*, *Ponds*, 2016 WL 7178483, at *3 ("Based on his expertise, Blackwell will be permitted to offer his opinion that the conditions of Track 18 were unsafe."); *see also Webb v. Carnival Corp.*, 321 F.R.D. 420, 426-27 (S.D. Fla. 2017) ("[T]estimony and expert report on industry regulations for cruise safety practices not legal conclusion and admissible . . . . [The expert] may testify about the Defendant's detailed policies and procedures that are in place to prevent the over service of alcohol to customers, including those procedures for what to do in the event of dealing with an intoxicated passenger.").
[60] R. Doc. 36-9 at pp. 5-7.

10

the IMO's website, the IMO is an international organization established "to encourage and facilitate the general adoption of the highest practicable standards in matters concerning maritime safety."[61] The IMO, "a specialized agency of the United Nations," is the "most active" organization "in promoting marine safety . . . . [The] IMO works through its key committees . . . that propose regulations concerning navigation, marine safety, and pollution control."[62] The United States District Court for the Southern District of Florida has referred to the IMO as a "respected organization."[63] The United States joined the IMO in 1950.[64] Guyana joined in 1980.[65]

Mr. Bridges references the MLC in his report as well.[66] The MLC is a treaty "[d]esiring to create a single, coherent instrument embodying as far as possible all up-to-date standards of existing international maritime labour Conventions and Recommendations, as well as the fundamental principles to be found in other international labour Conventions."[67] SCHOENBAUM'S ADMIRALTY & MARITIME LAW explains the history and origins of the MLC:

> At the 94th International Labour Conference in Geneva in February, 2006, ILO members, in response to criticism that its many different seafarer conventions were outdated and ineffective, adopted the Maritime Labour

---

[61] *Brief History of IMO,* INT'L MAR. ORG., https://www.imo.org/en/about/historyofimo/pages/default.aspx [https://perma.cc/SD4U-5QXC].
[62] THOMAS J. SCHOENBAUM, SCHOENBAUM'S ADMIRALTY & MARITIME LAW § 2:30 (6th ed. 2024).
[63] *Jay v. Royal Caribbean Cruises Ltd.*, 608 F. Supp. 3d 1249, 1258 (S.D. Fla. 2022) ("For example, [the expert] identified and quoted safety standards applicable to walkway surfaces, including maritime walkway surfaces like the gangway here, and which were issued by respected organizations such as the International Maritime Organization (IMO) and the American Society for Testing and Materials.").
[64] *Member States, IGOs and NGOs*, INT'L MAR. ORG., https://www.imo.org/en/ourwork/er0/pages/memberstates.aspx [https://perma.cc/W37U-C3JP].
[64] *See Seafarer Abandonment,* INT'L MAR. ORG., https://www.imo.org/en/ourwork/legal/pages/seafarer-abandonment.aspx#:~:text=Abandonment%20occurs%20when%20the%20shipowner,%2C%20accommodation%2C [https://perma.cc/6VFT-3WAK].
[65] *Id.*
[66] R. Doc. 36-9 at pp. 5-7.
[67] International Labour Organization, Maritime Labour Convention, Feb. 23, 2006, Preamble; *see also Ganpat v. E. Pac. Shipping PTE, Ltd.*, 66 F.4th 578, 591 (5th Cir. 2023) (Jones, J., dissenting) (referring to the MLC as a treaty and describing the MLC); *De La Cruz v. Gulf Coast Marine & Assocs., Inc.*, No. 09-167, 2011 WL 846100, at *6 (E.D. Tex. Mar. 7, 2011) (discussing the MLC).

> Convention (MLC 2006), a document of over 100 pages, that not only consolidates in one international document the existing *corpus* of international law regarding seafarers, but also updates and clarifies the law. This culminated a more than ten-year effort to restructure the labour and social conditions of seafarers under international law. The MLC 2006 entered into force in 2013. The MLC 2006 has been ratified by over 80 States and ILO members representing about 90 percent of the world's gross shipping tonnage. . . . The MLC 2006 is designed to become the "fourth pillar" of the international maritime regulatory regime along with three [other] International Maritime Organization-sponsored conventions.[68]

Neither the United States nor Guyana has ratified the MLC.[69]

It is clear the IMO guidelines and the MLC are well-known and well-respected in the maritime community. The IMO is a respected United Nations organization that promulgates maritime safety regulations.[70] The MLC is a "corpus of international law regarding seafarers" and is designed to be one of the four "'pillar[s]' of the international maritime regulatory regime."[71] Mr. Bridges may offer opinion testimony as to industry standards or norms based on his knowledge and experience as well as IMO guidelines and the MLC. Questions regarding his reliance on IMO guidelines and the MLC will affect the weight of the evidence rather than its admissibility and should be left for the finder of fact to judge.[72] At trial, Defendant will have the opportunity to conduct a vigorous cross-

---

[68] SCHOENBAUM, *supra* note 62, § 6:1 (internal footnote omitted).
[69] *Ratifications of MLC, 2006 - Maritime Labour Convention, 2006 (MLC, 2006)*, INT'L LABOUR ORG., https://normlex.ilo.org/dyn/nrmlx_en/f?p=1000%3A11300%3A0%3A%3ANO%3A%3AP11300_INSTRUMENT_ID%3A312331 [https://perma.cc/GZ9Z-76KW].
[70] SCHOENBAUM, *supra* note 62, § 2.30; *Jay*, 608 F. Supp. 3d at 1258.
[71] *Id.*
[72] *See Primrose*, 382 F.3d at 562; *Rosiere v. Wood Towing, LLC*, No. 07-1265, 2009 WL 982659, at *1 (E.D. La. Apr. 8, 2009) (citing *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty.*, 80 F.3d 1074, 1077 (5th Cir. 1996)); *Wolfe v. McNeil-PPC, Inc.*, No. 07-348, 2011 WL 1673805, at *6 (E.D. Pa. May 4, 2011); *see also Davis v. Carnival Corp.*, No. 20-24971, 2022 WL 18956176, at *3 (S.D. Fla. Oct. 12, 2022) ("[T]he use of certain standards, policies, and procucedures should be raised at trial where the Parties can argue the applicability of these standards and make objections.").

examination of Mr. Bridges to identify weaknesses in his testimony and to attack his credibility.[73]

**Testimony on Opinions 2, 5, 6, 8, 9, 10, and 15 will not be allowed.**

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), "[u]nless otherwise stipulated or ordered by the court," a party's expert witness disclosure "must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them [and] (ii) the facts or data considered by the witness in forming them."[74] The Rule 26 disclosure in this case states only that Mr. Bridges is a "liability expert whose testimony will concern information on standards for maritime employers, maritime industry customs, admiralty concepts, practices and usages and standard prohibition of abandonment."[75] The disclosure mentions his abandonment opinion but does not include the facts or data he considered in forming this opinion. As a result, Mr. Bridges was required to disclose the facts or data he considered in forming his opinion in his report.

Federal Rule of Evidence 702(b) provides that an expert may testify in the form of an opinion if the proponent of the testimony demonstrates it is more likely than not that an expert's testimony is "based on sufficient facts or data." To meet this standard, Rule 26 requires that "the expert must produce assumptions that the expert relied upon in forming his opinions"[76] as well as the facts and information the expert considered and any exhibits the expert used to summarize or support them.[77] "The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies"

---

[73] *See Pipitone*, 288 F.3d at 244 ("[W]hile exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits.").
[74] FED. R. CIV. P. 26(a)(2)(B)(i)-(ii).
[75] R. Doc. 45 at p. 4.
[76] *Johnson v. Mead Johnson & Co.*, No. 11-225, 2012 WL 12894473, at *8 (D. Minn. May 21, 2012) (citing FED. R. CIV. P. 26(b)(4) advisory committee's note to 2010 amendment).
[77] FED. R. CIV. P. 26(a)(2)(B)(i)-(iii).

examination of Mr. Bridges to identify weaknesses in his testimony and to attack his credibility.[73]

**Testimony on Opinions 2, 5, 6, 8, 9, 10, and 15 will not be allowed.**

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), "[u]nless otherwise stipulated or ordered by the court," a party's expert witness disclosure "must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them [and] (ii) the facts or data considered by the witness in forming them."[74] The Rule 26 disclosure in this case states only that Mr. Bridges is a "liability expert whose testimony will concern information on standards for maritime employers, maritime industry customs, admiralty concepts, practices and usages and standard prohibition of abandonment."[75] The disclosure mentions his abandonment opinion but does not include the facts or data he considered in forming this opinion. As a result, Mr. Bridges was required to disclose the facts or data he considered in forming his opinion in his report.

Federal Rule of Evidence 702(b) provides that an expert may testify in the form of an opinion if the proponent of the testimony demonstrates it is more likely than not that an expert's testimony is "based on sufficient facts or data." To meet this standard, Rule 26 requires that "the expert must produce assumptions that the expert relied upon in forming his opinions"[76] as well as the facts and information the expert considered and any exhibits the expert used to summarize or support them.[77] "The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies"

---

[73] *See Pipitone*, 288 F.3d at 244 ("[W]hile exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits.").
[74] FED. R. CIV. P. 26(a)(2)(B)(i)-(ii).
[75] R. Doc. 45 at p. 4.
[76] *Johnson v. Mead Johnson & Co.*, No. 11-225, 2012 WL 12894473, at *8 (D. Minn. May 21, 2012) (citing FED. R. CIV. P. 26(b)(4) advisory committee's note to 2010 amendment).
[77] FED. R. CIV. P. 26(a)(2)(B)(i)-(iii).

examination of Mr. Bridges to identify weaknesses in his testimony and to attack his credibility.[73]

**Testimony on Opinions 2, 5, 6, 8, 9, 10, and 15 will not be allowed.**

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), "[u]nless otherwise stipulated or ordered by the court," a party's expert witness disclosure "must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them [and] (ii) the facts or data considered by the witness in forming them."[74] The Rule 26 disclosure in this case states only that Mr. Bridges is a "liability expert whose testimony will concern information on standards for maritime employers, maritime industry customs, admiralty concepts, practices and usages and standard prohibition of abandonment."[75] The disclosure mentions his abandonment opinion but does not include the facts or data he considered in forming this opinion. As a result, Mr. Bridges was required to disclose the facts or data he considered in forming his opinion in his report.

Federal Rule of Evidence 702(b) provides that an expert may testify in the form of an opinion if the proponent of the testimony demonstrates it is more likely than not that an expert's testimony is "based on sufficient facts or data." To meet this standard, Rule 26 requires that "the expert must produce assumptions that the expert relied upon in forming his opinions"[76] as well as the facts and information the expert considered and any exhibits the expert used to summarize or support them.[77] "The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies"

---

[73] *See Pipitone*, 288 F.3d at 244 ("[W]hile exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits.").
[74] FED. R. CIV. P. 26(a)(2)(B)(i)-(ii).
[75] R. Doc. 45 at p. 4.
[76] *Johnson v. Mead Johnson & Co.*, No. 11-225, 2012 WL 12894473, at *8 (D. Minn. May 21, 2012) (citing FED. R. CIV. P. 26(b)(4) advisory committee's note to 2010 amendment).
[77] FED. R. CIV. P. 26(a)(2)(B)(i)-(iii).

Rule 702(b)'s standard.[78] Additionally, in a case in which an expert is asked to opine on whether a party's conduct complied with an applicable standard of care, the expert must explain his opinion on the proper standard of care and why the relevant conduct did not meet this standard.[79]

Mr. Bridges' report failed to comply with Rule 26 or Federal Rule of Evidence 702(b). Mr. Bridges did not produce the assumptions, if any, he relied on.[80] He did not list the facts or data he considered in reaching his conclusions.[81] He did not produce any exhibits he used to support his opinions.[82] Mr. Bridges' failure to disclose the bases and reasons for his opinions is a violation of Rule 26(a)(2)(B)(i) & (ii) and is indicative of Plaintiff's failure to meet his burden of proving that Mr. Bridges' testimony is based on sufficient facts and data under Federal Rule of Evidence 702(b).[83]

Further, as Defendants point out, many of Mr. Bridges' opinions improperly include his findings of fact and credibility determinations.[84] "An expert cannot make 'legal conclusions reserved for the court,' credit or discredit witness testimony, or 'otherwise make factual determinations reserved for the trier of fact.'"[85] If there are disputed facts, as there are in this case, Mr. Bridges was required to state what facts he was told to assume

---

[78] *Mathis*, 302 F.3d at 459-60.
[79] *See Coleman v. United States*, 912 F.3d 824 (5th Cir. 2019) (internal citations omitted) (citing *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008)) ("Under Texas law, a plaintiff alleging medical malpractice must establish, as a threshold issue, the standard of care that was breached. Unless that standard of care is common knowledge or within the experience of laymen, testimony from a medical expert is required to satisfy the plaintiff's threshold burden of proof.").
[80] R. Doc. 36-9; *Johnson*, 2012 WL 12894473, at *8 (citing FED. R. CIV. P. 26(b)(4) advisory committee's note to 2010 amendment).
[81] R. Doc. 36-9.
[82] *Id.*
[83] *See Moore*, 547 Fed. App'x at 515 (quoting *Paz*, 555 F.3d at 389).
[84] R. Doc. 36-1 at pp. 8-13.
[85] *Thibodeaux v. Gulf Coast Tugs, Inc.*, 668 F. Supp. 3d 486, 492-93 (E.D. La. 2023) (internal alterations omitted) (quoting *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 Fed. App'x 486, 491 (5th Cir. 2014)).

rather than simply regurgitating Plaintiff's version of the facts.[86] Testimony on Opinions 2, 5, 6, 8, 9, 10, and 15 will not be allowed.

## CONCLUSION

**IT IS ORDERED** that Defendant's Motion to Exclude is **GRANTED IN PART** and **DENIED IN PART**.[87]

The Motion to Exclude is **GRANTED** as to opinions 1, 4, 7, 11, 14, and 16.

The Motion to Exclude is further **GRANTED** as to opinions 2, 5, 6, 8, 9, 10, and 15.

The Motion to Exclude is **DENIED** as to opinions 12 and 13.[88]

**New Orleans, Louisiana, this 10th day of July, 2025.**

                                               _____
                                                      **SUSIE MORGAN**
                                         **UNITED STATES DISTRICT JUDGE**

---

[86] In *In re Tara Crosby, LLC*, another section of this court analyzed a different expert report authored by Mr. Bridges.[86] The court excluded Mr. Bridges' "testimony that d[id] little more than rehash Claimants' theory of the case or smear [the opposing party]'s reputation."
[87] R. Doc. 36.
[88] No motion to exclude was filed with respect to opinion 3. Mr. Bridges will be allowed to testify as to the factual assumptions he was instructed to make and he relied on in connection with opinions 3, 12, and 13.